aem/ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LIONEL MOHAMED,    )
            )
     Plaintiff,  )
            )
vs.           )
            )  Case No. 04-3165-JAR
T. TATTUM,      )
            )
     Defendant. )
_____)

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Lionel Mohamed, proceeding *pro se*, seeks monetary damages against defendant T. Tattum for

civil rights violations. (Doc. 1.)  Specifically, plaintiff claims that defendant failed to protect him from an

attack by a fellow inmate at the United States Penitentiary in Leavenworth, Kansas ("USPL") in

violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Plaintiff's

Complaint alleges jurisdiction under 42 U.S.C. § 1983, 42 U.S.C. § 1986, 28 U.S.C. §1343, 28

U.S.C. § 1331, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*.[1]

Defendant filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment

(Doc. 14.), arguing that: (1) the doctrine of sovereign immunity applies to bar plaintiff's suit; (2) the

doctrine of qualified immunity applies to bar plaintiff's suit; (3) principles established in *Heck v.*

_____

[1]  403 U.S. 388 (1971).

*Humphrey* and *Edwards v. Balisok* apply to bar plaintiff's suit; (4) plaintiff cannot establish either a Fifth Amendment violation or an Eighth Amendment violation; and (5) the Fourteenth Amendment does not apply to claims against federal officials.  Plaintiff filed a response.

The Court grants defendant's Motion for Summary Judgment, as plaintiff's claim against defendant in his official capacity is barred by sovereign immunity, plaintiff's claim against defendant in his individual capacity is barred by qualified immunity, all of plaintiff's claims are barred under *Heck v. Humphrey* and *Edwards v. Balisok*, and plaintiff fails to establish a violation of the Fifth or Eighth Amendments.

## I.  Legal Standards

### A.      *Fed. R. Civ. P. 12(b)(1): Lack of Subject Matter Jurisdiction*

There are two statutory bases for federal subject matter jurisdiction. First, under 28 U.S.C. § 1332, federal district courts have original jurisdiction of civil actions where complete diversity of citizenship and an amount in excess of $75,000 (exclusive of interest and costs) in controversy exist. Second, under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," or federal question jurisdiction.  In addition, if the Court has federal question or diversity jurisdiction of some claims, it may exercise supplemental jurisdiction over state law claims.[2]

The Tenth Circuit has commented on the limited jurisdiction of the federal courts and summarized the duties of the district court in considering whether it has jurisdiction to consider a case:

> The Federal Rules of Civil Procedures [sic] direct that "whenever it

---

[2] 28 U.S.C. § 1367.

> appears by suggestion of the parties or otherwise that the court lacks
> jurisdiction of the subject matter, the court shall dismiss the action.". . .
> Moreover, "[a] court lacking jurisdiction cannot render judgment but
> must dismiss the cause at any stage of the proceedings in which it
> becomes apparent that jurisdiction is lacking." . . .  Nor may lack of
> jurisdiction be waived or jurisdiction be conferred by "consent, inaction
> or stipulation." Since federal courts are courts of limited jurisdiction,
> there is a presumption against our jurisdiction, and the party invoking
> federal jurisdiction bears the burden of proof.[3]

Plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction is proper.[4]  Mere allegations of jurisdiction are not enough.[5]

## B.    Fed. R. Civ. P. 56: Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[6]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[7]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[8]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[9]

---

[3] *Penteco Corp. v. Union Gas System,* 929 F.2d 1519, 1521 (10th Cir. 1991) (internal citations and quotations omitted).

[4] *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[5] *Id.* at 798.

[6] Fed. R. Civ. P. 56(c).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Id.*

[9] *Id.* at 251-52.

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[10] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[11] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[12] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[13] When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[14]

The Court must construe *pro se* pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[15] However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[16] The Court need only accept as true plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[17]

---

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[11] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[12] *Id.*

[13] *Id.*

[14] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[15] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[16] *Id.*

[17] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II.  Uncontroverted Facts

Pursuant to D. Kan. Rule 56.1, "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of the summary judgment unless specifically controverted by the statement of the opposing party."  In his response to defendant's motion, plaintiff made no effort to controvert defendant's statement of facts.  As Judge Crow stated in *Beams v. Norton*,[18] "the non-movant's duty to admit or deny allegations of fact is a well-established procedural rule in Fed. R. Civ. P. 56 and is not too complex for a pro se litigant to understand and follow."  Of course, this failure to comply with this well-established procedural rule does not alone make summary judgment proper, for plaintiff's burden to respond arises only if the motion is properly supported in the first instance.[19] "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)."[20]  If the evidence presented by the moving party does not satisfy this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented*."[21]  Thus, if a nonmoving party fails to properly respond to a motion for summary judgment, the court must first examine the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and that the moving party is entitled to judgment as a matter of law.  Having made some examination, this Court finds that defendant has properly supported his assertions of uncontroverted facts, in accordance with Rule 56.  Thus, this

---

[18] 256 F. Supp. 2d 1203, 1206 (D. Kan. 2003), *aff'd*, 93 Fed. Appx. 211 (10th Cir. 2004) (unpublished).

[19] *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

[20] *Id.* at 1194.

[21] *Id.*

Court considers defendant's statement of facts uncontroverted.

Plaintiff is an inmate incarcerated at the USPL; and defendant is a Maintenance Worker Supervisor at the USPL who served as plaintiff's Unit Counselor.  Plaintiff and his alleged attacker shared a cell continuously at USPL from October 25, 2000 until June 7, 2002, except for two occasions when plaintiff was placed in administrative detention, or disciplinary segregation.  One such occasion was when plaintiff was placed in disciplinary segregation from March 24, 2002 until June 4, 2002.  Plaintiff never advised USPL staff of any conflict between he and his cellmate.

On June 7, 2002, plaintiff and his cellmate were involved in a fight in which they both received numerous injuries.  Both inmates were transported to an outside hospital for medical treatment.  An investigation of this incident indicated that plaintiff was actively involved in the fight with his cellmate, and was not merely a victim of an attack.  Plaintiff subsequently admitted guilt during the disciplinary hearing.  Ultimately, both inmates were found guilty of fighting and were sanctioned accordingly.  Plaintiff did not appeal the disciplinary findings, despite being advised of his right to do so.

Prior to the present action, plaintiff filed suit against defendant Tattum and four other officials, alleging similar civil rights violations stemming from the June 7, 2002 fight.  Judge Vratil dismissed without prejudice plaintiff's action for failure to administratively exhaust his remedies.  Judge Vratil noted that the defendants had conceded exhaustion of administrative remedies with regard to defendant Tattum.[22]  Plaintiff thereafter commenced the present action against defendant Tattum only.

### III.  Discussion

---

[22] *Id.* at *4.

Plaintiff sues defendant in both his official and individual capacities.  But in his response to defendant's motion for summary judgment, plaintiff states that defendant is "being sued in his Individual Capacity."  Because of the liberal construction required for *pro se* pleadings, the Court construes plaintiff's action as against defendant both in his individual capacity and his official capacity as a Federal Bureau of Prisons ("BOP") official.

### A. *Statutory Claims not Cognizable*

Some of plaintiff's claims fail because defendant is a *federal* official, not a state official.  Under 42 U.S.C. §1983, a *state* official may be held individually liable for actions taken under color of state law.[23]  But Section 1983 does not apply to federal officials.[24]  Plaintiff's Section 1986 claim also fails, for one may not state such a cause of action without first stating a cause of action for conspiracy to violate civil rights under section 1985.[25]  And plaintiff failed to state a claim under Section 1985 theory. Finally, 28 U.S.C. section 1343 is merely the provision granting district courts original jurisdiction over actions alleging violations of section 1983 or section 1986 and likewise fails to provide jurisdiction for plaintiff's claim.[26]

### B. *Bivens Claims*

As a federal official, defendant may be held *individually* liable for actions taken under color of

---

[23] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[24] *See* 42 U.S.C. § 1983.

[25] *See* § 1986; *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984).

[26] *See* 28 U.S.C. § 1343.

federal authority.[27]  In the seminal case of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court held that plaintiffs may seek damages from federal officials in their individual capacities for violations of the Fourth Amendment.[28]  Courts since *Bivens* have characterized additional constitutional claims against federal officials as *Bivens* claims.[29]

### 1. Official Capacity Claims

In contrast, a plaintiff may not establish liability under *Bivens* against a federal official in his *official* capacity.[30]  In *Farmer v. Perrill*,[31] the Tenth Circuit explained that "an official-capacity suit contradicts the very nature of a *Bivens* action" and that "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity."[32]  Instead, an action against a federal official in his official capacity is construed as an action against the United States.[33]

And, a suit for damages against the United States is barred by sovereign immunity unless such immunity has been waived.[34]  The United States has not waived sovereign immunity in *Bivens* actions.[35]

---

[27] *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395 (1971).

[28] *Id.* at 395-97.

[29] *See, e.g., Carlson v. Green*, 446 U.S. 14, 18 (1980) (recognizing a *Bivens* action for Eighth Amendment violations).

[30] *Simmat v. United States Bureau of Prisons*, __F.3d__, No. 03-3361, 2005 WL 1541070, at *6 (10th Cir. July 1, 2005); *see Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *cert denied*, 125 S. Ct. 344 (2004) ("a *Bivens* claim cannot be brought against . . . defendants in their official capacities").

[31] 275 F.3d 958 (10th Cir. 2001).

[32] *Id.* at 963.

[33] *Id.*

[34] *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989).

[35] *Laury v. Greenfield*, 87 F. Supp. 2d 1210, 1213 (D. Kan. 2000); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 483-86 (1994).

Therefore, because plaintiff's only proper action against defendant is a *Bivens* action, his claims against defendant in his official capacity are barred by the doctrine of sovereign immunity.

### 2. *Individual Capacity Claims*

### A.  Qualified Immunity

Under *Bivens*, federal officials may be individually liable for constitutional violations performed under color of federal authority.[36]  Qualified immunity is a defense to a *Bivens* action.[37]  In *Harlow v. Fitzgerald*,[38] the Court explained that qualified immunity shields government officials from liability for damages incurred in the performance of discretionary functions as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."[39]  Courts use an objective standard, evaluating the official's conduct in light of the state of the law at the time of the purported constitutional or statutory violation.[40]  Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."[41]

Upon defendant's assertion of a qualified immunity defense in a summary judgment motion, plaintiff has a two-part burden.  Plaintiff must come forward with facts or allegations that defendant's

---

[36] *Bivens,* 403 U.S. at 391 (concluding that federal agents may be held individually liable for Fourth Amendment violations).

[37] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

conduct was a violation of a clearly established constitutional or statutory right at the time of its occurrence and that the violated right was "clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right."[42]  The issue of immunity is a legal one and the Court may not avoid it by framing it as a factual issue.[43]

   The threshold question the Court will consider is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[44] Plaintiff contends that defendant violated his constitutional rights by "blatantly and deliberately" failing to protect him from a known and existing threat by a fellow inmate.  Plaintiff alleges that on two occasions, sometime in March of 2002 and on June 5, 2002, his alleged attacker gave defendant notes which were "clear, concise and explicive [sic]," and that indicated he planned to severely injure or kill plaintiff if they shared a cell.  Defendant denies receiving any correspondence from plaintiff's alleged attacker in which he articulated an intent to physically harm plaintiff.

   It is well-settled that prisoners have a constitutional right to reasonable protection from the attacks of fellow inmates.[45]  The Tenth Circuit has held that the failure to protect inmates constitutes an Eighth Amendment violation if the prison official has "an obdurate and wanton disregard for the inmate's safety."[46]  The Supreme Court has used a similar "deliberate indifference" standard to evaluate

---

[42] *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997); *see Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988).

[43] *Lawmaster v. Ward*, 125 F.3d at 1347.

[44]  *Saucier*, 533 U.S. at 201.

[45] *See Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992).

[46] *Id.*

failure to protect claims.[47]  Deliberate indifference is a higher standard than either simple negligence or

heightened negligence.[48]  The subjective component of the deliberate indifference standard requires that

the official "be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference."[49]

Defendant denies notice or knowledge of such facts.  And plaintiff fails to demonstrate a

genuine issue of fact concerning defendant's knowledge or notice.  Although plaintiff alleges that

defendant "blatantly and deliberately" failed to protect plaintiff after receiving notice that his cellmate

planned to injure him, plaintiff offers insufficient evidentiary support to demonstrate a genuine issue of

fact.  Housing records give no indication of conflict between plaintiff and his cellmate.  Plaintiff never

approached or informed USPL staff of any problems or conflicts between him and his cellmate.

Further, after an investigation showed that plaintiff had been actively involved in a fight with his cellmate,

plaintiff admitted guilt and was sanctioned for fighting.

Moreover, other evidence offered by plaintiff is insufficient to demonstrate a genuine issue of

fact about defendant's notice or knowledge of a threat to plaintiff.   Plaintiff does not produce the

threatening notes that his cellmate allegedly wrote and delivered to defendant.  Nor does plaintiff show

that he has personal knowledge that the cellmate wrote threatening notes and/or delivered such notes to

defendant.  Plaintiff submits his own affidavit, but his affidavit fails to demonstrate personal knowledge

that such notes were drafted and delivered to defendant by his cellmate.  Indeed, Plaintiff was

---

[47] *See, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976).

[48] *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407-10 (1997).

[49] *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

11

admittedly in disciplinary segregation in March when the first note was allegedly delivered to defendant.

Nor does plaintiff produce evidence from anyone else with personal knowledge of facts concerning the notes and defendant's notice or knowledge of the notes.  Plaintiff offers affidavits of three other inmates, which contain identical language attesting to seeing the notes and attesting that plaintiff's cellmate told them he delivered the notes to defendant.  Although each affiant attests to seeing the notes, none of the affiants states that he witnessed plaintiff's cellmate deliver the notes to defendant.  Furthermore, it is insufficient for the affiants to attest that plaintiff's cellmate told them that he had delivered the notes to defendant.   This constitutes hearsay evidence that is inadmissible when considering a summary judgment motion, as it would not be admissible evidence at trial.

Under the local rules of this district, "[a]ffidavits or declarations [must] be based on personal knowledge and by a person competent to testify to the facts stated which shall be admissible in evidence."[50]  Furthermore, a witness's testimony is only admissible if evidence supports a finding that the witness has personal knowledge of a matter.[51]  "Conclusory and self-serving affidavits are not sufficient."[52]

Finally, plaintiff offers an unsworn, handwritten letter, purportedly written to plaintiff by the same cellmate who allegedly wrote and delivered the subject threatening notes to defendant.  Notably, this handwritten letter refers to plaintiff as "my friend;" and it appears to be signed, "Ras."  Of

---

[50] D. Kan. R. 56.1(d).

[51]  Fed. R. Evid. 602.

[52] *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)); *see Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991); *Sledge v. Cummings*, 995 F. Supp. 1276, 1283-84 (D. Kan. 1998); *Johnson v. Potter*, No. 01-4182-SAC, 2004 WL 2823237, at *2 (D. Kan. Nov. 10, 2004).

12

course, this letter is not a sworn affidavit of "Ras" and thus does not enjoy that evidentiary weight.

Moreover, this letter does not refer to any threats made against plaintiff, and it does not state that "Ras" communicated to defendant anything that could be interpreted as a threat to do plaintiff injury.  Rather, in the letter, "Ras" states that while plaintiff was in segregation, "Ras" made a written request to his unit manager "telling the Administration that I do not want to go on living in a cell with this triffling [sic] peice [sic] of shit," when plaintiff was in segregation.  Of course, this statement merely indicates that "Ras" communicated his unwillingness to live with plaintiff; it does not indicate that "Ras" communicated to defendant his desire or intention to do harm to plaintiff.

In fact, in this unsworn handwritten letter from "Ras" the only suggestion concerning a threat it: "Jones is not the unit manager for that block and if he put Yt back into that cell with me, then he is playing with his job.  Todd also told me that Jones told him that Yt will be coming back to the cell with me, I told him well we will see."  This letter, even if admissible, does not constitute evidence that defendant was aware of a substantial risk to plaintiff and was indifferent to it.  There is no identifiable reference to the plaintiff, and any potential threat appears to be directed at "Jones," who is apparently some sort of other official at the prison.  Thus, this letter from "Ras" is also insufficient to demonstrate a triable issue of fact.

As such, plaintiff's claim that defendant acted with deliberate indifference in failing to protect him constitutes a conclusory allegation which is insufficient to withstand summary judgment.[53]   Because

---

[53] It remains unresolved whether a heightened pleading standard is applied to *Bivens* actions.  *See Mangino v. Dep't of Army*, No. 94-2067, 1994 WL 477260, at *13 n.1 (D. Kan. 1994).  In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court rejected a heightened pleading standard for municipal liability cases under 42 U.S.C. §1983.  *Id.* at 166-67.  Then, in *Mangino*, the court suggested that *Leatherman* may have implicitly overruled the heightened pleading standard altogether.  *Mangino*, 1994 WL 477260, at *13 n.1.

plaintiff has failed to come forward with adequate facts or allegations that defendant's conduct violated a clearly established law of which a reasonable person would be aware, the Court grants summary judgment in favor of defendant based on the doctrine of qualified immunity.

### C. Constitutional claims not cognizable

#### 1. <u>Heck</u> and <u>Edwards</u> Analysis

Defendant argues that even if he does not enjoy qualified immunity from this suit, plaintiff's claims are barred under the Supreme Court's decisions in *Heck v. Humphrey*[54] and *Edwards v. Balisok*.[55]  In *Heck*, the Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff seeking damages under section 1983 must prove that the conviction or sentence was previously invalidated.[56]  Thus, in section 1983 actions, courts must evaluate whether a judgment for the plaintiff implies the invalidity of his sentence.[57]  If it does, and if the conviction or sentence has not been invalidated, the plaintiff's complaint must be dismissed.[58]

In *Edwards*, the Supreme Court extended its holding in *Heck* to a prisoner's allegation of due process violations in a disciplinary proceeding.[59]  The Court concluded that the plaintiff's challenge to

---

[54] 512 U.S. 477 (1994).

[55] 520 U.S. 641 (1997).

[56] *Heck*, 512 U.S. at 486-87.

[57] *Id.* at 487.

[58] *Id.*

[59] *Edwards*, 520 U.S. at 643-48.

14

the disciplinary proceeding procedures implied the invalidity of the judgment against him.[60]

Accordingly, the Court held that the plaintiff's claims were not cognizable under section 1983.[61]

Plaintiff's claim is not entirely analogous to the claims in either *Heck* or *Edwards*. The claims in *Heck* and *Edwards* were made under section 1983, whereas plaintiff's only appropriate claim is under *Bivens*. Further, plaintiff's claims were not related to either the investigation, as in *Heck*, or to allegedly deficient disciplinary procedures, as in *Edwards*. Instead, plaintiff's claims were related to defendant's purported failure to protect him from an attack by a fellow inmate.

Although plaintiff's claims are not entirely analogous to the claims in *Heck* and *Edwards*, the principles announced by the Court in those cases are equally applicable to the case at hand. In *Crow v. Penry*,[62] the Tenth Circuit held that a *Heck* analysis is proper in *Bivens* actions,[63] and, notably, other courts have followed *Heck* in failure to protect actions.[64]

Just as the actions in *Heck* and *Edwards* implied the invalidity of the plaintiffs' conviction and disciplinary action, a finding that defendant failed to protect plaintiff from an attack by his cellmate implies the invalidity of the disciplinary adjudication whereby plaintiff was adjudged guilty of fighting.

---

[60] *Id.* at 645.

[61] *Id.* at 648.

[62] 102 F.3d 1086 (10th Cir. 1996).

[63] *Id.* at 1087.

[64] *See, e.g., Lewis v. Richards*, 107 F.3d 549, 555 (7th Cir. 1997) (applying the rationale in *Heck* to conclude that a prisoner's section 1983 failure to protect claim was barred where the result of his disciplinary hearing had not been invalidated).

Plaintiff's *Bivens* claim bears a sufficient relationship to the disciplinary adjudication such that the claim is not cognizable absent the invalidation of the disciplinary adjudication.  If plaintiff's injuries were actually the result of defendant's failure to protect rather than plaintiff's *active participation* in a fight, the disciplinary hearing findings are necessarily erroneous and must be invalidated.  But plaintiff admitted guilt during the disciplinary hearing and has not appealed the disciplinary hearing findings, despite being given an opportunity to do so.  Accordingly, his failure to protect action against defendant is not cognizable pursuant to the principles announced in *Heck* and *Edwards*.

### 2. Fifth and Eighth Amendment Claims

Even if defendant were not entitled to immunity, plaintiff's constitutional claims cannot survive summary judgment.  Although plaintiff alleges that defendant violated his Fifth Amendment rights in addition to his Eighth Amendment rights, his claim is properly characterized as an Eighth Amendment claim, as a failure to protect claim is essentially a cruel and unusual punishment claim.[65]  "[W]here government conduct is constrained by an explicit textual source of constitutional protection – such as the Eighth Amendment's prohibition against cruel and unusual punishment – that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."[66]  Additionally, the Supreme Court has suggested that the same state of mind, deliberate indifference, is required to make out both an Eighth Amendment claim and a substantive due process claim in the

---

[65] *See Dowling v. Hannigan*, 968 F. Supp. 610, 612 n.5 (D. Kan. 1997) (determining that a prisoner's failure to protect claim should be analyzed under the Eighth Amendment standards rather than the Fifth Amendment standards); *see also Berry v. City of Muskogee*, 900 F.2d 1489, 1494 n.6 (10th Cir. 1990) (reasoning that the Eighth Amendment "provides the primary source of protection for prisoners").

[66] *Dowling*, 968 F. Supp. at 612 n.5 (citing *Berry*, 900 F.2d at 1492 n.2) (internal quotations omitted).

prison setting.[67]  This Court therefore applies the Eighth Amendment standard in evaluating plaintiff's failure to protect claim.

In order to establish a failure to protect claim under the Eighth Amendment, a plaintiff must allege facts establishing that he was incarcerated under conditions posing a substantial risk of serious harm and that the defendant was deliberately indifferent to the plaintiff's safety.[68]  As noted above, plaintiff's allegations that defendant acted with deliberate indifference are conclusory and insufficient to withstand summary judgment.

### Fourteenth Amendment Claim

Plaintiff's claims that defendant violated his Fourteenth Amendment rights fails, as the Fourteenth Amendment does not apply to the United States or to its officers.[69]  Rather, "the commands of the Fourteenth Amendment are addressed only to the State or to those acting under color of its authority."[70]  A person may be liable under the Fourteenth Amendment only if he is a state actor.[71]  To be regarded as a state actor, a person must: (1) be a state official; (2) have acted together with or obtained substantial aid from the state; or (3) engage in conduct that is chargeable to the state.[72]  Defendant is not properly regarded as a state actor.  Therefore, plaintiff's Fourteenth Amendment claim

---

[67] *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199 n.5 (1989).

[68] *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

[69] *District of Columbia v. Carter*, 409 U.S. 418 (1973).

[70] *Id.* at 423.

[71] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923 (1982).

[72] *Id.*

17

is dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary

Judgment (Doc. 13.) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this  _4th_  day of August 2005.

**S/ Julie A. Robinson**
**Julie A. Robinson**
**United States District Judge**
